UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

WILLIAM JOEL HAITHCOTE, II,   )
              )
   *Petitioner*,      )
v.             )  No. 4:09-cv-4
             )  *Mattice/Lee*
JUAN CASTILLO, Warden    )
ROBERT C. COOPER, JR.    )
ATTORNEY GENERAL & REPORTER )
             )
   *Respondent.*     )

## **MEMORANDUM**

This is a petition for the writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 by William Joel Haithcote, II ("Petitioner") [Court Doc. 3]. Petitioner seeks review of his 2006 state convictions for two counts of conspiracy to commit first degree murder for which he received two concurrent twenty year terms of imprisonment. Petitioner raises several issues in his petition, all of which are procedurally defaulted except his claim that the trial court erred in failing to grant his motion to dismiss the original indictment based on the violation of his rights under the Interstate Agreement on Detainers Act ("IAD")[1] and the violation of his Sixth Amendment right to a speedy trial.

Two non-dispositive motions are pending before the Court to which Respondent has not objected. The first is Petitioner's motion to introduce material evidence [Court Doc. 17]. The second is Petitioner's motion to file a supplemental brief which incorporates the brief

---

[1] Although Tennessee's statute refers to the Interstate Compact on Detainers, for purposes of consistency and clarity, it will be referred to as the IAD in this memorandum.

in the body of the motion [Court Doc. 22].  Both motions will be **GRANTED** [Court Docs. 17, 22].

Also before the Court is Respondent's dispositive motion to dismiss asserting that Petitioner's habeas petition must be dismissed based on the procedural default of all claims except the IAD and speedy trial claims which, Respondent argues, must be dismissed based on the deferential review standards set forth in § 2254(d) and *Williams v. Taylor*, 529 U.S. 362, 405 (2000) [Court Doc. 20].

After reviewing the record and the applicable law, the Court concludes that Petitioner's § 2254 petition [Court Doc. 3] will be **DISMISSED** and Respondent's motion to dismiss will be **GRANTED** [Court Doc. 19].


I.    **STANDARD OF REVIEW—HABEAS CLAIMS COGNIZABLE UNDER 28 U.S.C. § 2254**

Petitioner may obtain habeas relief if he can demonstrate that he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254.  Under Rule 8 of the Rules Governing Section 2254 Cases in the United States Districts Courts, the Court is to determine, after a review of the response, the transcript, the record of state court proceedings, and the expanded record, whether an evidentiary hearing is required.  If a hearing is not required, the district judge is to dispose of the case as justice dictates.  The Court finds it is unnecessary to hold an evidentiary hearing in the instant case.

Section 2254(d), as amended by Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), limits a federal district court's jurisdiction to review habeas claims on the

merits. In particular, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). *See Williams v. Taylor*, 529 U.S. 362, 411 (2000) (interpretation of the language of § 2254).

In reviewing a state court's adjudication of a habeas claim, the federal district court must presume the state court's factual determinations were correct. 28 U.S.C. 2254(e)(1). The petitioner may rebut this presumption of correctness by clear and convincing evidence. *Id*.

## II.  PROCEDURAL BACKGROUND

To place the IAD and speedy trial issues in proper context it is necessary to discuss the lengthy procedural background from the time of Petitioner's arrest until the entry of his guilty plea. Therefore, the Court will outline the chronology of events from Petitioner's arrest until his plea.

Petitioner was arrested on September 23, 2002 for various offenses associated with the instant case, including first degree murder charges. After a preliminary hearing, Petitioner was bound over to the grand jury, and was subsequently indicted on November 18, 2002. The indictment included four counts of first degree murder, four counts of felony murder, one count of aggravated arson, and one count of criminal conspiracy (Case Number 15,170). Petitioner was arraigned on November 18, 2002. On January 23, 2003,

a second indictment, in Case Number 15,213, was returned against Defendant, charging him with additional offenses arising out of events alleged to have occurred on June 5, 2002, but which the State claimed related to matters contained in the earlier indictment (Case Number 15,170); Petitioner was arraigned on the same date. Petitioner was on bond relative to his state charges when he was subsequently indicted by the federal government in the Eastern District of Tennessee on February 25, 2003, on one count of conspiracy to violate 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), relating to Schedule II controlled substance (powder cocaine) [Addendum No. 1, Exhibit E, pp. 12-14]. Petitioner was detained in the Eastern District of Tennessee as a result of the federal charge.

Based in part on Petitioner being detained in federal custody, the state charges were placed on the retired docket on August 18, 2003, with the following caveat:

> It is hereby ordered, and not opposed by counsel for the defendant, to place the above styled matter on the retired docket subject to recall in the event the State files a motion to place this matter back on the active docket <u>or upon the defendant filing a motion through the Interstate Compact on Detainer(s)</u>.

[Addendum No. 1, Exhibit E, Motion to Dismiss, p. 14]. Petitioner subsequently entered a plea of guilty to the federal charge on November 10, 2003, and remained in federal custody serving his sentence.

Petitioner's state case remained inactive until August 16, 2004, when the State filed a motion to reactivate and return it to the active docket, Case Numbers 15, 170 and 15,213. It appears that an inquiry was made by the Federal Bureau of Prisons on October 4, 2004, to determine the status of Petitioner's reactivated charges. On November 9, 2004, Petitioner subsequently filed a motion in state court, requesting a speedy trial and stating that he was unable to file under the IAD because the state had not placed a

detainer on him [Addendum No. 1, p. 16].[2]

A hearing was scheduled for December 6, 2004 on Petitioner's motion but the State was unable to complete the process to have him transported from the federal prison to state court. Thus, the court rescheduled the hearing for January 20, 2005. On December 28, 2004, the State obtained a Writ of Habeas Corpus *Ad Prosequendum* and Petitioner was returned to the State of Tennessee on January 18, 2005. The record, however, reflects no further activity on this case until June 9, 2005, when a joint motion to continue the trial date was filed by the state and defense counsel.

During September of 2005, a trial date was scheduled for January 17, 2006 [Addendum No. 5]. On November 18, 2005, counsel, on Petitioner's behalf, filed a motion to dismiss the indictments, alleging his rights under Tennessee's IAD and his right to a speedy trial had been violated [Addendum No. 1, Exhibit E]. The motion was denied on December 14, 2005, *nunc pro tunc* to December 1, 2005. "Thereafter, because of certain problems that the State . . . had encountered with the original indictment, as returned, in Case No. 15,170, a superseding indictment was brought against Appellant in Case No. 15,951. Following the return of that superseding indictment, . . . [it was] dismiss[ed]. . . based on facial defects in [some] counts . . . [and] the State of Tennessee reconvened a special session of the Bedford County Grand Jury and corrected the defects . . ."

_____

[2]     Petitioner was represented by counsel when he filed this *pro se* motion. Although the court scheduled a hearing and Petitioner was transferred pursuant to a Writ of Habeas Corpus *Ad Prosequendum*, it does not appear that the court adjudicated the motion until after counsel filed a motion to dismiss in November of 2005 [Addendum No. 3]. Neither the record nor the trial court's order clearly indicate how Petitioner's *pro se* motion was resolved. The Court observes that counsel's correspondence to Petitioner soon after the filing of the *pro se* motion indicates counsel believed the *pro se* motion was frivolous (Court Doc. 17, November 23, 2004, letter). Nevertheless, counsel referenced the *pro se* motion in his November 2005 motion to dismiss, so the Court presumes the trial court's order includes the dismissal of the *pro se* motion.

[Addendum No. 5, p. 3].

On January 11, 2006, Petitioner entered guilty pleas to two counts of conspiracy to commit first degree murder and was sentenced to two concurrent twenty year terms in the Tennessee Department of Correction. Petitioner did not pursue a direct appeal.[3]

On January 10, 2007, Petitioner filed a state petition for post-conviction relief [Addendum No. 1, pp. 1-5]. After reviewing the record of the entry of the plea and written documents which Petitioner executed prior to the entry of his plea, the post-conviction court dismissed the petition without a hearing on May 23, 2007 [Addendum No. 1, pp. 35-36]. That judgment was affirmed by the Tennessee Court of Criminal Appeals on October 15, 2008, and the Tennessee Supreme Court denied permission to appeal on April 27, 2009. *Haithcote v. State*, No. M2007-01579-CCA-R3-PC, 2008 WL 4613871 (Tenn. Crim. App., Oct. 15, 2008). The state post-conviction court and the appellate court determined that the "sole basis of the petition [was] a complaint by the petitioner that the trial court erred in failing to grant his motion to dismiss the original indictment based on the grounds of the violation of his rights under the Interstate Compact on Detainers (the Compact) and the failure to obtain a speedy trial." *Id.* at *1.

III.    **FACTUAL BACKGROUND**

Although the factual background of the crime is not pertinent to the resolution of the claims in this habeas proceeding, the Court will provide a very brief summary of the facts.

---

[3]    Petitioner waived his right to pursue a direct appeal as part of his plea agreement [Court Doc. 22].

On June 5, 2002, Petitioner, along with some of his friends, planned the robbery and murder of two of the group's friends, one of whom possessed a large amount of money and had approximately five kilos of cocaine.[4]   After leaving a bar, the two male victims, along with two female companions, spent the night at the residence of one of the male victims.   Petitioner provided the firearm to his companion who committed the murders of all four people by shooting them in the head.  In addition, an accelerant was poured on and around the bodies and the trailer in which they were located was deliberately set on fire. A fairly elaborate scheme, which is not relevant to the resolution of this habeas petition, was concocted to implicate individuals who were not involved in the crime as being responsible for the crime.  [Addendum No. 4, pp. 4-11].

IV.   **ANALYSIS**

At the outset, the Court observes claims not raised in state court are procedurally barred from habeas review unless a petitioner can show cause and prejudice from that default, or actual innocence, *Coleman v. Thompson*, 501 U.S. 722, 734-35 (1991). Petitioner has raised three claims which are procedurally barred from habeas review.

The three issues now asserted that Petitioner failed to raise in the state post-conviction trial court are: (1)  his guilty plea was coerced as a result of the trial court denying his motion to dismiss the charges against him for violation of his speedy trial rights; (2)  the trial court lacked jurisdiction to render judgment since the mandates of the IAD were not followed;[5] and (3)   the state post-conviction court erroneously refused to

---

[4]        One of the friends was holding the cocaine for the victim.

[5]        The Sixth Circuit has determined the IAD is not jurisdictional in nature.  *Kowalak v. United States*, 645 F.2d 534, 536 (6th Cir. 1981).

address his claims on the merits. Because the legal and factual substance of these claims were not presented through one full round of the state court's established review procedures, *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999); *Adams v. Holland*, 330 F.3d 398, 403-05 (6th Cir. 2003), they are procedurally barred from habeas review unless Petitioner can show cause and prejudice from that default, or actual innocence, *Coleman v. Thompson*, 501 U.S. 722, 734-35 (1991), neither of which Petitioner has shown. Therefore, the Court will not review the procedurally barred claims in this habeas proceeding.

The only claim that is properly before this Court is Petitioner's claim contending the trial court erred in failing to grant Petitioner's November 18, 2005, motion to dismiss the original indictment based on grounds of an alleged violation of Tennessee's IAD Act and his Sixth Amendment right to a speedy trial. A review of Petitioner's state post-conviction petition [Addendum No. 1, pp. 1-5], the trial court's order dismissing the petition [*Id.*, pp. 35-36], and the appellate court's decision affirming the dismissal of the post-conviction petition [Addendum No. 9], clearly indicate that these were the only issues raised in the state courts and, thus, are the only issues properly before this Court. The Court will summarize the applicable law before addressing the issues.

## A. Applicable Law

The IAD is an agreement entered into by forty-eight states,[6] the District of Columbia, and the federal government which establishes uniform procedures for resolution of one jurisdiction's outstanding criminal charges against another jurisdiction's prisoner. *See New York v. Hill*, 528 U.S. 110, 111 (2000). "A State seeking to bring charges against a prisoner in another State's custody begins the process by filing a detainer, which is a request by the State's criminal justice agency that the institution in which the prisoner is housed hold the prisoner for the agency or notify the agency when release is imminent." *Id*. at 112. The IAD contains certain procedures by which a prisoner subjected to a detainer may demand the speedy disposition of certain charges against him in another jurisdiction. *See United States v. Mauro*, 436 U.S. 340, 343-44 (1978).

The IAD, a congressionally sanctioned compact enacted pursuant to the Compact Clause of the United States Constitution, U.S. Const. art. I, § 10, cl.3, is a federal law subject to federal construction. *See Carchman v. Nash*, 473 U.S. 716, 719 (1985). Nevertheless, federal habeas review of an alleged IAD violation is limited to errors constituting a "fundamental defect" resulting in a "complete miscarriage of justice" or "an omission inconsistent with rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 341 (1994) (citations omitted); *see also Metheny v. Hamby*, 835 F.2d 672, 674 (6th Cir. 1987) (alleged violation of IAD's "trial-before-return" provision not cognizable on federal habeas review absent exceptional circumstances), *cert. denied*, 488 U.S. 913 (1988). In addition, rights created under Article IV of the IAD are nonjurisdictional and

---

[6]     Tennessee is a signatory of the IAD.

waivable. *Kowalak v. United States*, 645 F.2d 534, 536-37(6th Cir. 1981)

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. *Doggett v.United States*, 505 U.S. 647, 651 (1992). To determine whether this right has been violated, the Court applies the four-pronged test[7] established by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

## B. Waiver

Petitioner asserts here, as he did in State court, that the violation of his rights under Tennessee's IAD statutes amounts to a due process violation and a violation of his right to a speedy trial under the federal constitution. The state post-conviction court and appellate court concluded that these claims were ruled upon by the trial court when it dismissed his motion to dismiss the original indictment based on grounds of the violation of his rights under the IAD and the Sixth Amendment [Addendum No. 1, pp. 35-36, Addendum No. 9].[8] Additionally, the state courts concluded Petitioner waived this claim when he entered his guilty pleas.

After reviewing the record, the state post-conviction court, observing that it had conducted a hearing on Petitioner's pretrial motion claiming violation of the IAD and his speedy trial rights on November 18, 2005, and subsequently denied the motion, dismissed Petitioner's post-conviction petition without an evidentiary hearing, for the following reasons:

---

[7] This consists of an analysis of the length of the delay, the reasons for the delay, the defendant's assertion of his right to a speedy trial, and any prejudice to the defendant.

[8] Subsequent to the ruling by the trial court, superceding indictments were issued to which Petitioner pled guilty on January 11, 2006.

> Subsequent to that ruling, superceding indictments were issued to which Mr. Haithcote pled guilty on January 11, 2006. During the plea elocution the trial court specifically asked Mr. Haithcote if he understood that by entering the plea he would be giving up any complaint that he might have about he trial court's decision dealing with Mr. Haithcote's pretrial motions dealing with the violation of his speedy trial rights, to which Mr. Haithcote answered under oath that he understood that to be the case. Therefore, this court concludes that the record supports the proposition that Mr. Haithcote was knowledgeable that by entering the plea that he would be giving up any compliant about the pretrial motion rulings and since this is the sole basis of the post-conviction relief petition, that it is meritless.

[Addendum I, pp. 35-36]. The appellate court, affirming the denial of post-conviction relief, agreed that Petitioner's voluntary plea waived his non-jurisdictional pre-plea issues and that those claims were previously determined by the trial court.

A review of the record not only reveals that Petitioner waived these claims when he entered his voluntary guilty plea, it also reveals that there was no violation of the IAD or of Petitioner's right to a speedy trial.

In state court, Petitioner's trial counsel filed a motion to dismiss asserting violation of the IAD and violation of Petitioner's right to a speedy trial [Addendum No. 1, pp. 12-30]. Specifically, counsel asserted the State's failure to try the case in a timely fashion after the State initiated a detainer against Petitioner while he was serving a sentence in the Federal penitentiary system violated the IAD, and/or the State's failure to try the Defendant after gaining his custody through the process of a Writ of Habeas Corpus *Ad Prosequendum*, which was issued December 28, 2004, violated the IAD and Petitioner's right to a speedy trial.[9]

Petitioner was returned to Bedford County in response to the Writ of Habeas Corpus

---

[9] It appears the writ was dated December 28, 2005, but the trial court noted "[i]t is clearly evident that the order properly should be dated 2004." [Addendum No. 3, p. 2].

*Ad Prosequendum* on January 18, 2005. The record, however, does not reflect that any hearings were conducted until December 1, 2005, when the trial court conducted a hearing on counsel's November 18, 2005, motion to dismiss.[10] That hearing apparently was not transcribed as it is not a part of the record before this Court, but the trial court's order indicates there was such a hearing as the order states, that after considering the testimony and arguments of respective counsel, the judge concluded the IAD was not violated and Petitioner had not been denied a speedy trial [Addendum No. 3].

Subsequent to the motion hearing, the state court issued an order making the following specific findings:

> [N]o detainer has ever been requested or issued by Bedford County officials to the federal corrections facility that would trigger the application of the Interstate Compact on Detentions [sic]. The court does find that the Defendant was returned to Bedford County on January 18, 2005, in compliance with the Writ of Habeas Corpus Ad Prosequendum, and that such action complies with the Interstate Compact on Detention [sic] triggering the requirement to try the Defendant in a timely fashion. However, the case was not prosecuted timely because of the resignation of the trial judge and illness of the assigned senior judge to the case. In addition to these events, the primary reason that the case was not timely tried was that the Defendant acquiesced at times and at other times actually sought either individually or by joining into the continuance of the case. In this regard, Mr. Haithcote has been continuously represented from the date of his being charged by his attorney, Mr. John Norton, and through his agent/attorney he has acquiesced to repeated continuances of the matter with the most recent agreement to such a continuance being by a jointly entered into Motion for Continuance on September 16, 2005. The current Motion to Dismiss for the failure of a speedy trial was not filed until November 18, 2005. Although there has been significant delay in the advancement of the case to trial, Mr. Haithcote has not been readily available for such a trial because of his continued incarceration in the federal penitentiary system since approximately February 25, 2003, and his agreement for the retirement of

---

[10] Defense counsel's motion to dismiss referenced Petitioner's *pro se* motion for a speedy trial requesting that the speedy trial arguments be treated as an amendment to the *pro se* motion for speedy trial [Addendum No. 1, p. 12].

the case for a significant period of time. In regard to his constitutional claim, no proof exists that these delays have prejudiced the Defendant in advancing a defense nor has there been any proof of the loss of availability of material witnesses or that memories of the events have been diminished by this passage of time.

Therefore, this court finds no factual basis to conclude that either the statutory or the constitutional claims of the Defendant for dismissal for the lack of a speedy trial are merited. Therefore, this motion is overruled.

[Addendum No. 3, p.2].

Petitioner did not appeal the trial court's ruling on his motion. Petitioner subsequently, without reserving the right to have the Tennessee appellate court review his IAD and speedy trial claims, entered voluntary guilty pleas to two counts of conspiracy to commit murder, wherein he specifically agreed that he was waiving his right to pursue his IAD and speedy trial claims. Petitioner entered into a favorable plea agreement wherein he agreed to plead guilty to two counts of conspiracy to commit murder and receive a total twenty year sentence to run concurrent with his federal conviction.

During his state court criminal proceedings, Petitioner was asked if he understood he was waiving his rights to further contest the trial court's decision on his pretrial motions dealing with the violation of speedy trial rights, to which Petitioner answered, under oath, that he understood he was waiving those claims. The following colloquy took place:

COURT:         Okay. Now, let's discuss a little bit about what you're doing here today. You understand you're under oath and everything that you say today is being recorded by this court reporter?

PETITIONER:    Yes, sir.

COURT:         And you understand that if at a later time, if you were to change your testimony today, this record could and would be used against you in a charge of perjury?

PETITIONER:    Sir, yes, sir.

13

| | |
|---|---|
| COURT: | Okay. It's very important that if you don't understand anything I ask you, that you ask me to repeat myself or to explain myself to you so that you fully understand what you're doing here today. Because the gravity of your plea today is very important, and it is something that's going to be a lasting agreement that you've made. |
| PETITIONER: | Yes, sir. |
| COURT: | All right. Now, I asked you about your attorney. Has he fully investigated this case? |
| PETITIONER: | Yes, sir. |
| COURT: | Has he done everything that he can possibly do to assist you in this matter? |
| PETITIONER: | Yes, sir. |
| COURT: | Do you have any complaints about what he's done? |
| PETITIONER: | No, sir. |
| | . . . |
| COURT: | Now, you have filed in the past a number of motions, one of which of the motions that you filed was a complaint to file a speedy trial, and ask that the case be dismissed against you because of the fact that it was not presented in a timely fashion. Do you recall that, us having a hearing last month on that? |
| PETITIONER: | Yes, sir. |
| COURT: | And do you understand if you enter this plea, you'd be giving up any complaint about the decision of the Court as regards to that motion or any other motion? |
| PETITIONER: | Yes, sir. |

In addition, the court asked Petitioner certain questions which insulates his guilty plea from attack. The court took great care in ascertaining the voluntariness and accuracy of the plea; providing detailed advice to Petitioner concerning his rights, the waiver of those rights, and the consequences of the plea; and in general, ensuring that the plea was not

14

coerced [Addendum No. 4].

The United States Supreme Court has explained that when the voluntariness of a guilty plea is being evaluated, courts should consider the following:

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Thus, not only does the record clearly reflect that Petitioner voluntarily waived any speedy trial claim and IAD violation claim, *see United States v. Eaddy*, 595 F.2d 341, 344 (6th Cir. 1979) (prisoner can waive rights under Article IV of IAD), the record also clearly reflects the court scrupulously followed the proper procedure for accepting a plea and Petitioner is bound by the sworn statements he made in response to the Court's inquiry. Thus, there is no doubt that Petitioner entered a knowing and voluntary guilty plea.

An unconditional guilty plea constitutes a waiver of all pre-plea, non-jurisdictional constitutional deprivations. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). This waiver includes alleged speedy trial violations. *See Howard v. White*, 76 Fed.Appx. 52, 53 (6th Cir. 2003), *available at* 2003 WL 22146139 (speedy trial claim was waived when petitioner entered an unconditional *nolo contendere* plea because the right to a speedy trial is not a jurisdictional issue); *see also United States v. Pickett*, 941 F.2d 411, 416 (6th Cir. 1991) (failure to enter conditional guilty plea prevented defendant from raising speedy trial and due process challenges on direct appeal of his convictions), and alleged IAD

violations. *Kowalak v. United States*, 645 F.2d 534, 537 (6th Cir. 1981) (entry of a plea of guilty is a waiver of the right to raise IAD violations). Petitioner's voluntary and counseled unconditional plea precludes claims of constitutional deprivations occurring prior to entry of the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (unconditional guilty plea constitutes waiver of all pre-plea non-jurisdictional constitutional deprivations); *Davila v. United States*, 258 F.3d 448, 450 (6th Cir. 2001) ("It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement" (internal quotation marks and citations omitted)); *Kowalak v. United States*, 645 F.2d 534, 536-537 (6th Cir. 1981) (rights created under IAD are nonjurisdictional and waivable). Consequently, Petitioner's unconditional pleas to conspiracy to commit murder in the instant case waived his claim of alleged IAD and Sixth Amendment violations.

Petitioner does not claim, nor does the record reflect, that he entered a conditional plea. Consequently, in addition to the waiver entered by Petitioner during his guilty plea, his voluntary and knowing guilty plea waived his IAD and speedy trial claims as a matter of well-settled federal law. Nevertheless, even if Petitioner's IAD and speedy trial claims were not waived by his guilty plea, those claims fail for the reasons explained below.

### C. Violation of IAD

Petitioner contends the violation of Article IV(c) of the IAD entitles him to federal habeas corpus relief.[11] Petitioner claims, as he did in state court, that Tennessee violated the IAD when the state failed to try him within 120 days from the time they transferred him

---

[11]     Article IV(c) of Tennessee's IAD statute provides: "In respect of any proceedings made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or the prisoner's counsel being present, the court having jurisdiction of the matter may grant an necessary or reasonable continuance." Tenn. Code Ann. § 40-31-101.

to state custody.  Federal habeas corpus relief is warranted only when a state prisoner demonstrates "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254.  Supreme Court precedent demonstrates that although the IAD is state law, it is a law of the United States as well because it "is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Carchman v. Nash*, 473 U.S. 716, 719 (1985); *see also Cuyler v. Adams*, 449 U.S. 433, 4380442 (1981) ("congressional consent transforms an interstate compact . . . into a law of the United State").  Nevertheless, Petitioner's claim that the IAD was violated fails for two reasons. Therefore, no habeas relief is warranted.

First, and foremost, a detainer was never issued, thus the IAD was never implicated. The Court has thoroughly reviewed the record, and concludes the state court's determination that no detainer in relation to these charges was filed is supported by the record.  Petitioner was transferred from federal custody based on a writ of habeas corpus *ad prosequendum*, which is not a detainer within the meaning of the IAD.  Therefore, the IAD was not triggered.  *United States v. Mauro*, 436 U.S. 340 (1978) (writ of habeas corpus *ad prosequendum* is not a detainer with the meaning of the IAD).  The Court observes that the record reflects the only detainer ever filed was filed after Petitioner was sentenced on the instant conspiracy to commit murder convictions.  The detainer notified the federal institution that once Petitioner completed his sentence with them he owed Tennessee 20 years (on the state convictions that are the subject of this habeas petition) to run concurrently with his federal sentence [Addendum No. 1, p. 10].  The record reflects that the Federal Bureau of Prisons received only this one detainer in reference to Petitioner

[Addendum No. 1, p. 11]. Therefore, because a detainer was never lodged, the IAD was never triggered and, consequently, was not violated. Accordingly, Petitioner has not demonstrated the IAD statute was violated.

Second, even assuming the IAD was triggered, under the circumstances of this case there was no constitutional violation. Federal habeas review of an alleged IAD violation is limited to errors constituting a "fundamental defect" resulting in a "complete miscarriage of justice" or "an omission inconsistent with rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 342 (1994). The Court observes that the United State Court of Appeals for the Sixth Circuit has generally "held that alleged violations of the Interstate Agreement on Detainers are not cognizable under either Section 2254, . . . or Section 2255 . . . *Curtis v. United States*, 123 Fed.Appx. 179, 184 (6th Cir. 2005), *available at* 2005 WL 89057 (citing *Metheny v. Hamby*, 835 F.2d 672 (6t Cir. 1987); *Mars v. United States*, 615 F.2d 704 (6th Cir. 1980)(noting that its decision does not foreclose post-conviction relief for government violations of the IAD when petitioner is actually prejudiced or that his IAD rights properly asserted before the trial court were not properly vindicated"). "In *Metheny*, [the Sixth Circuit] held that unless the violation of the Interstate Agreement on Detainers involved 'a fundamental defect which inherently results in a complete miscarriage of justice' that no habeas relief was available." *Id.* at 184 (quoting *Metheny v. Hamby*, 835 F.2d at 673). In addition, the Supreme Court has determined that a court's failure to observe the 120-day speedy trial rule of the IAD is not cognizable during federal habeas proceedings when the defendant registered no objection to the trial date at the time it was set and suffered no prejudice attributable to the late commencement of the trial. *Reed v. Farley*,

512 U.S. 339 (1994) ("When a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists"). This is the situation Petitioner's case presents.

In the instant case, even if the alleged violation of the IAD occurred, it does not amount to a constitutional violation as Petitioner has not demonstrated a fundamental defect, complete miscarriage of justice, or an omission inconsistent with fair procedure, or any exceptional circumstances warranting habeas relief, *id.* at 342; *see also Metheny v. Hamby*, 835 F.2d 672 (6th Cir. 1987), *cert. denied*, 488 U.S. 913 (1988) (joining the majority of circuits in holding that, in absence of exceptional circumstances, a claimed state violation of Article IV(e) of the IAD is not a fundamental defect cognizable under 28 U.S.C. § 2254), or prejudice attributable to the delay); *Reed v. Farley*, 512 U.S. at 342 ("[A] state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement").[12]

Assuming Petitioner's rights under IAD attached on January 18, 2005, when he was presumably transferred to Bedford County on these charges, there is no doubt that Petitioner's state trial did not take place within 120 days after he arrived in Bedford County. Nevertheless, Petitioner has not shown that his state criminal attorney raised an objection to trying the case beyond the 120-day period when the court scheduled the trial date. A state court's failure to observe the 120-day rule of Article IV(c) of the IAD is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was

---

[12]    Article IV(c) provides that trial shall be commenced within one hundred and twenty days of an inmate's transfer to state custody.

set.  *Reed*, 512 U.S. 352.  Moreover, not only did the state trial judge conclude Petitioner's counsel "acquiesced to repeated continuances of the matter," [Addendum No. 3], the record reflects trial counsel signed a joint motion—on June 9, 2005—requesting to postpone the trial date.  At that time, the 120-day period had already expired.  Petitioner's attorney raised the alleged violation of the IAD's 120-day period and speedy trial claim when he filed a motion to dismiss the indictment on November 18, 2005, more than five months after the expiration of the 120-day period and approximately three months after he agreed to the January 2006 trial date,[Addendum No. 1].  The state trial judge denied the motion to dismiss, and Petitioner subsequently entered guilty pleas to the two charges of conspiracy to commit murder.  "When a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists.  An unwitting judicial slip of the kind involved here ranks with the nonconstitutional lapses we have held not cognizable in a postconviction proceeding."  *Reed*, 512 U.S. at 349.  In addition, as explained in the speedy trial section below, Petitioner suffered no prejudice attributable to the late commencement of the trial.

Consequently, the Tennessee trial court's decision to deny Petitioner's motion to dismiss on the basis of the violation of the 120-day rule was neither contrary to, nor an unreasonable application of clearly established federal law as determined the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1)

In summary, neither Bedford County nor the State of Tennessee ever filed a detainer prior to the resolution of Petitioner's state charges, thus, the State's letter and writ of habeas corpus *ad prosequendum* did not constitute a detainer under the IAD.  *United States v. Mauro*, 436 U.S. 340 (1978) ("[A] writ of habeas corpus *ad prosequendum* is not

a detainer for purposes of the Agreement."). Since no detainer was lodged by the state authorities, the IAD never became applicable, the state was never bound by its provisions, and there was no violation of the IAD. Alternatively, even if the IAD was implicated, Petitioner's IAD claim is not cognizable in this habeas proceeding because it did not rise to the level of a constitutional violation. Accordingly, Petitioner is not entitled to any habeas relief on his IAD claim.

### D. Speedy Trial Claim

"In all criminal prosecutions, the accused shall enjoy the right to speedy and public trial." U.S. Const. amend. VI; *see also Klopfer v. North Carolina*, 386 U.S. 213 (1967) (holding that the right to a speedy trial is fundamental and imposed by the Due Process Clause of the Fourteenth Amendment on the States). A four-factor test for evaluating a Sixth Amendment speedy-trial claim has been established by the Supreme Court. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The four factors to be considered when analyzing a speedy-trial claim are: 1) length of delay; 2) the reasons for the delay; 3) the defendant's assertion of this right; and 4) prejudice to the defendant. None of these four factors alone is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id*. at 533. Applying these factors to Petitioner's case, it is clear Petitioner's speedy-trial rights were not violated.

### I. Delay

"The length-of-delay, or 'presumptive-prejudice,' prong of the *Barker* test is, thus, a threshold issue." *United States v. Jackson*, 473 F.3d 660, 664 (6th Cir.2007) (citations

omitted).  "[B]ecause of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case."  *Barker v. Wingo*, 407 U.S.  at 530-31.  Generally, a delay of one year or more between a defendant's indictment and trial is presumptively prejudicial and triggers a speedy trial analysis, *Doggett v. United States*, 505 U.S. 647, 651 (1992), but "deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself."  *Baker v. Wingo*, 407 U.S. at 521 (no Sixth Amendment right to speedy trial violation when murder trial was delayed five years after arrest where defendant did not pursue speedy trial and there was no showing of serious prejudice).

The more than three year delay in bringing Petitioner to trial from the date of his arrest and the one-year delay from the time he arrived in Bedford County until his January 17, 2006, trial date, triggers the necessity for inquiry into the other factors considered in addressing a speedy trial violation.

There was significant delay in this case: Petitioner was incarcerated in the federal penitentiary system from 2003 until he was brought to state court in January of 2005; he agreed to the retirement of this state case for a significant period of time; the trial judge resigned; the assigned judge became ill; the prosecuting attorney was out on medical leave; and Petitioner acquiesced at times and actually sought individually or jointly the continuance of the case.  Although it appears the blame for the delay is fairly balanced between the State and Petitioner, the significant delay in this case requires further inquiry.

   ii.  *Reason for the Delay*

The factual findings of the trial court are presumed correct unless Petitioner rebuts the presumption of correctness by clear and convincing evidence, something Petitioner has

not done in this case.  On December 1, 2005, the state court conducted a hearing on defense counsel's November 18, 2005, motion to dismiss and presumably, Petitioner's *pro se* motion for speedy trial which he apparently filed on November 9, 2004 [Addendum No. 3].  After considering the testimony and arguments the court concluded that no detainer was ever requested or issued and denied the motions.  Specifically, the Court found Mr. Haithcote was incarcerated in the federal penitentiary since February 25, 2003; both sides agreed to the retirement of the case for a significant period of time; Mr. Haithcote was continuously represented by his attorney, Mr. John Norton, from the date of his being charged and through his agent/attorney he repeatedly acquiesced  at times and at other times actually sought either individually or by joining into the continuance of the case, including a jointly entered motion for a continuance until September 16, 2005;[13] and the delay partially resulted from the resignation of the trial judge and illness of the assigned senior judge to the case [Addendum No. 3].  Since Petitioner has not rebutted these factual findings, they are presumed correct and these delays are not chargeable to the State.

In addition, the Court observes that the State, while acknowledging Petitioner had been in state custody since January 19, 2005, during a December 2005 hearing explained that in spring of 2005 it became aware of Federal inmates who had information concerning the murder cases.  The Federal inmates provided evidence that allowed the state to take the conspiracy to commit murder charge to the Grand Jury for a superseding indictment. Before those interviews were completed, Michael McKown, the District Attorney General who was prepared to try the case, had a "medical episode," which prevented him from

---

[13]      In June of 2005, trial counsel and the state entered into a joint motion to continue the September 2005 trial date [Court Doc. 17, Joint Motion to Continue Trial Date].

working until December 1, 2005, when he was able to resume his duties as District Attorney General [Addendum No. 2]. Thus, although not purposeful and considering the *Barker* Court's instruction that "a valid reason, such as a missing witness, should serve to justify appropriate delay[,]" *id.* at 531, it appears the blame for the delay is equally shared by Petitioner and the State.

<em>iii.     Whether Defendant Asserted His Right to a Speedy Trial</em>

Petitioner was charged on or about September 23, 2002, and was continuously represented by Mr. John Norton. Petitioner filed a *pro se* motion for speedy trial on November 9, 2004. The record reflects Petitioner, although aware of his speedy trial right, did not seriously pursue that right until counsel filed a motion to dismiss on the basis of the violation of the IAD and speedy trial right on November 18, 2005 [Addendum No. 1, Exhibit E, pp. 12-30]. The motion to dismiss was filed after a jointly entered motion for a continuance, filed on June 9, 2005, and anticipated to be presented to the judge on August 22, 2005, or soon thereafter, was filed. Judge Daniel resolved the joint motion by scheduling Petitioner's trial to begin January 17, 2006 [Court Doc. 17, Joint Motion to Continue Trial Date]. The motion to dismiss was denied after the trial court concluded Petitioner's IAD and speedy trial rights had not been violation. Petitioner subsequently entered his guilty plea on January 11, 2006 (six days before his scheduled trial) [Addenda Nos. 4 & 5].[14]

Thus, as instructed by the Supreme Court of the United States in *Barker v. Wingo*,

---

[14]     Petitioner pled guilty to two counts of conspiracy to commit first degree murder, Class A felonies. He was sentenced to two concurrent twenty-year sentences as a Range I Standard Offender and that sentence ran concurrent with his federal prison sentence. In addition, Petitioner was given pre-trial jail credit beginning on January 17, 2003, so that he would effectively be released from his state sentence on or before the expiration of this federal sentence [Addendum No. 5, p. 4].

407 U.S. at 528, Petitioner has some responsibility to assert a speedy trial claim and in this situation where Petitioner generally acquiesces in the delays until after the trial is set, less weight is attached to the assertion of the right. Petitioner's assertion of his right to a speedy trial was made by counsel in November of 2005, just two months prior to entering his guilty plea, and approximately five months after the filing of a joint motion to continue the trial date.[15] Thus, although Petitioner invoked his speedy trial rights, he did so after agreeing to a January 2006 trial date. Because Petitioner did not assert his right to a speedy trial until almost ten months after arriving in Tennessee and approximately five months after agreeing to the January 2006 trial date without objection, this factor does not weigh in Petitioner's favor.

### iv. Whether Delay Prejudice Petitioner

Lastly, there is no evidence Petitioner was prejudiced by the delay. The United States Supreme Court has explained the manner in which to assess prejudice:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

*Barker v. Wingo*, 407 U.S. 532.

In the instant case, Petitioner was incarcerated pursuant to federal convictions, thus he did not experience oppressive pretrial incarceration, and there is no evidence of his anxiety and concern in the record. In addition, there is no evidence—other than the

---

[15] Although, it appears Petitioner's *pro se* motion was filed in November of 2004, there is nothing in the record indicating he or counsel pursued that motion.

speculative claims of presumptive prejudice raised by defense counsel in his state trial motion to dismiss—that the defense was impaired in any way nor does Petitioner assert how the delay in prosecution prejudiced his defense. Keeping in mind that Petitioner's speedy trial right is affirmed in the Constitution while considering that the vast majority of the delay in this case is either justified or equally attributable to the State and Petitioner and that there is an absence of any specific allegation of prejudice, the Court concludes there is insufficient evidence to establish Petitioner was prejudiced.

In summary, the length of delay between arrest and trial in this case was over three years. Petitioner was continuously represented by his attorney, Mr. John Norton, from the date of his being charged until the resolution of his criminal case.[16] As previously explained, the majority of the delay during that three-year period can be attributed to the following strong excuses: the agreement for the retirement of the case from August 18, 2003, until sometime after it filed a motion requesting to reactivate the state cases on August 16, 2004; the resignation of the trial judge some time after January 20, 2005; illness of the assigned senior judge; Petitioner's acquiescence in the continuance of the case at least as late as June of 2005; during the Spring of 2005 the prosecution was notified of new information and evidence from Federal inmates who had been housed with Petitioner in the federal prison; and the illness of the District Attorney General Michael McKown who was preparing to try this case. Therefore, the majority of the delay was equally attributable to both the State and Petitioner. However, even if the majority of the delay is attributed to the State, the absence of prejudice and Petitioner's delayed assertion of his speedy-trial

---

[16] Mr. John Norton also represented Petitioner in his state post-conviction proceedings.

rights in November of 2005, and only after he acquiesced to the January 2006 trial date, demonstrates Petitioner was not deprived of his Sixth Amendment right to a speedy trial.

Therefore, because Petitioner has not offered any clear and convincing evidence to rebut the presumption of correctness that must be accorded the factual findings made by the state court, 28 U.S.C. § 2254(e)(1); demonstrated the state trial court's denial of the motion to dismiss or the state post-conviction courts' conclusion that Petitioner's voluntary guilty pleas waived his speedy trial claim runs contrary to federal law or resulted from an unreasonable application of federal law, habeas relief is not warranted. Accordingly, Petitioner has not demonstrated he was denied a right to a speedy trial; this claim is without merit.

V.   **CONCLUSION**

Because Petitioner waived his speedy trial and IAD claims in state court and, alternatively, because the IAD was not invoked and Petitioner's speedy trial rights were not violated, he is not entitled to federal habeas relief.

A separate Judgment will enter.

_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE